E-FILED
Tuesday, 28 November, 2017  03:47:45 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MITCHELL THOMAS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **No.: 16-cv-4100-JBM** |
| | ) | |
| **DR. KUL B. SOOD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER ON SUMMARY JUDGMENT**

Plaintiff filed a *pro se* complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs at the Hill Correctional Center ("Hill").  Defendant filed a Motion for Summary Judgment [ECF 32] to which Plaintiff has responded [ECF 35].  For the reasons stated herein, Defendant's Motion for Summary Judgment [ECF 32] is GRANTED.

**FACTS**

Plaintiff alleges that on February 2, 2015, he blacked out in his cell, hitting his head, back and right shoulder.  Plaintiff claims that he now suffers headaches, low back pain and the aggravation of a preexisting right shoulder injury.  He has alleged that Defendant should have referred him to an outside specialist and should have provided him shoulder surgery.  Defendant asserts that Plaintiff only made one complaint of back pain and no complaints of headache.  He admits that Plaintiff had a chronic shoulder injury and that Plaintiff had undergone two apparently unsuccessful surgeries to his right shoulder prior to his transfer to Hill, in 2009 and 2010.  It is Defendant's position that the prescribed course of physical therapy and non-surgical management was appropriate, given the failure of the two previous procedures.

Defendant has provided relevant medical records in which there are no complaints of back pain immediately after the event, no history of a black-out/fall and no complaints of

1

headache.  While Plaintiff complained of increased right shoulder pain, there is no record of this until March 19, 2015, and no record that he attributed it to a black-out episode.

On March 19, 2015, Plaintiff was seen in the healthcare unit for the first time after the February 2, 2015 incident.  He complained of right shoulder pain, indicating he had had it for "years," and requested the renewal of his prescriptions for ibuprofen and analgesic balm.  On March 30, 2015, Plaintiff saw Defendant Sood for the first time since the alleged incident.  Plaintiff complained of shoulder and elbow pain, with no recorded complaints of headache or back pain and no reference to the black-out.  Defendant re-ordered Motrin (ibuprofen) and analgesic balm.  Defendant saw Plaintiff against on May 5, 2015, for complaints of elbow pain and ordered a six-month permit for an elbow sleeve.

On June 28, 2015, Plaintiff requested a  refill of his Motrin prescription and was scheduled to be seen on July 13, 2015.  This appointment was cancelled due to a lockdown at the facility.  On August 11, 2015, Plaintiff complained that his elbow sleeve had been taken by "Orange Crush" tactical team members.  Plaintiff's scheduled September 3, 2015 appointment was canceled but his Motrin prescription was renewed.  Plaintiff was seen by Defendant again on September 23, 2015, for complaints of elbow and shoulder pain and was issued a new permit for an elbow sleeve.

On October 13, 2015, Defendant saw Plaintiff for the first recorded complaints of back pain.  Again, there is no reference in the record to the alleged February 2015 black-out.  Defendant ordered thoracic spine x-rays which were essentially negative.  Defendant saw Plaintiff for the last time on December 1, 2015.  On that date, Plaintiff complained of breast enlargement with no record of headache or back pain.  Plaintiff was transferred from Hill on December 8, 2015.

2

Plaintiff has filed a response to the motion for summary judgment in which he failed to answer Defendant's undisputed material facts.  While a failure to respond may be deemed an admission, the Court may waive this requirement upon a "showing of good cause."  *See* CDIL-LR 7.1(D)(3)(6).  The Court, in fact, must consider the merits even if the non-moving party files no response at all.  *See Boyd v. Habeck*, 2013 WL 518966 *1 (E.D. Wis. Feb. 12, 2013) (summary judgment not to be granted by default).  The Court's order on summary judgment is issued after full consideration of Plaintiff's response to Defendant's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 7477 U.S. 317, 322-23 (1986).  The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24.  Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial.  *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997).  The party opposing summary judgment "must present definite, competent evidence in rebuttal."  *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  Finally, a scintilla of evidence in support of the non-movant's

position is not sufficient to oppose successfully a summary judgment motion; "there must be

evidence on which the jury could reasonably find for the [non-movant]."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DELIBERATE INDIFFERENCE STANDARD

The Eighth Amendment prohibits punishments that are incompatible with "evolving

standards of decency that mark the progress of a maturing society."  *Trop v. Dulles*, 356 U.S. 86,

101 (1958).  "The Eighth Amendment safeguards the prisoner against a lack of medical care that

may result in pain and suffering which no one suggests would serve any penological purpose."

*Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(internal quotations and footnote omitted).

"Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious

medical needs."  *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Rodriguez v. Plymouth*

*Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)("[d]eliberate indifference to serous medical

needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the

Constitution."); *Walker v. Benjamin*, 293 F.3d 1030, 1036-37 (7th Cir. 2002)(noting that the

Eighth Amendment applies to the states through the Fourteenth Amendment).  A physician's

adherence to a course of treatment known to be ineffective, or failure to take instructions from a

specialist may constitute deliberate indifference.  *Petties v. Carter*, 836 F.3d 772, 730 (7th Cir.

2016), as amended (Aug. 25, 2016). (Internal citations omitted).

## ANALYSIS

Defendant asserts that the "professional judgment standard" applies in this case.

*Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998); *Johnson v. Doughty*, 433

F.3d 1001, 1013 (7th Cir. 2006).  Under this standard, a medical professional is entitled to

deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Defendant asserts that Plaintiff has failed to identify any facts to support that the treatment provided by Defendant represented "a substantial departure from accepted professional judgment, practice, or standards…" and "a complete abandonment of medical judgment." *Id.* at 895; *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Defendant denies that he was deliberately indifferent to Plaintiff's shoulder pain, and references the records which establish that he ordered physical therapy and Motrin pain medication. Defendant has provided affidavit testimony that after consultation with other physicians, he believed that the best course was for Plaintiff to continue with physical therapy and anti-inflammatory pain medication. Defendant described Plaintiff's shoulder condition as "chronic" and attested that he did not believe he would benefit from a third surgery. Defendant asserts that, though Plaintiff apparently would like additional surgery, he has not provided any evidence to support that he would benefit from it or that the failure to provide it amounts to deliberate indifference.

Plaintiff claims that since he has been at Dixon he has been referred out three times to the University of Illinois at Chicago Hospital ("UIC") for "the complaints that Dr. Sood …failed[ed] to address in any meaningful way." Plaintiff does not provide any medical records relevant to these referrals. He testified at his deposition that he continues to shoulder pain which now radiates into to his neck. The medical records from Dixon reveal that on October 4, 2016, Plaintiff was diagnosed with neck pain and cervical neck radiculopathy.[1] On January 24, 2017,

---

[1] Cervical radiculopathy is a syndrome of pain and/or sensorimotor deficits due to compression of a cervical nerve root. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3192889/

he was seen by a UIC physician who recommended that plaintiff continue with physical therapy. The physician also considered undertaking "injections" into the shoulder and neck. [ECF 32-2 p. 35]. It should be noted that Plaintiff did not allege neck pain in his complaint, only lower back and shoulder pain, and headaches. As a result, the neck claim is not considered here. *See Shanahan v. City of Chi.,* 82 F.3d 776, 781 (7th Cir. 1996) ("plaintiff may not amend his complaint through arguments … in opposition to a motion for summary judgment.")

Here, Defendant has provided an uncontroverted affidavit that after consultation with two other medical professionals, he exercised professional judgment in prescribing a course of physical therapy, non-steroidal anti-inflammatories, and analgesic balm. Plaintiff offers nothing to refute this. He testified only that he was evaluated by a physician 14 months later who was "considering" injections. The injections, however, appear related not only to the shoulder pain but also to the subsequently developed cervical radiculopathy. With the span of time and difference in symptoms, the proposed plan for injections is insufficient to establish that the treatment offered by Defendant was "a substantial departure from accepted professional judgment, practice, or standards…" and "a complete abandonment of medical judgment." *Sain*, 512 F.3d 895.

Plaintiff also claims to have suffered headaches since the February 2, 2015 black-out and that Defendant was deliberately indifferent for not ordering a CT scan of his head. There is no indication in the record, however, that he told Defendant of the black-out episode or headaches. Plaintiff did not appear in nursing sick call until six weeks after the event and apparently did not complain of headaches to the nurse. While Plaintiff testified that he told Defendant of his headaches "many times," he does not explain the absence of any such record, or claim that he grieved Defendant's failure to treat his headaches. Defendant, for his part, denies that Plaintiff

complained of headaches and asserts that there was no reason to order a head CT scan for symptoms of which he was not aware.

Plaintiff's first recorded complaint of headache at Dixon was on May 26, 2016, five months after his transfer there. This, despite the fact that Plaintiff had been seen on several previous occasions in the healthcare unit. Plaintiff does not claim that he has been offered any headache treatment at Dixon or UIC, that he has had the CT Scan, or that he has received a diagnosis as to the headaches. Even if the Court assumes that Plaintiff had told Defendant of his headaches, this is not enough to establish that Defendant was deliberately indifferent for not ordering a CT scan where subsequent treaters similarly did not order it. Additionally, as Plaintiff was already receiving pain medication for his shoulder condition, this would also have treated the headaches symptoms, perhaps explaining the paucity of recorded complaints.

As to the low back pain, the Hill records document only one such complaint on October 13, 2015. Defendant responded by ordering thoracic spine x-rays which were read as normal. Shortly thereafter, Plaintiff was transferred from Hill with no other recorded complaints of low back pain. Here, the Court does not find that Defendant actions, based on a single recorded complaint, evidence a sufficiently culpable state of mind so as to be deliberately indifferent. *See Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

Here, Plaintiff fails to support that Defendant's medical judgment as to his shoulder pain, low back pain and headache were such that "no minimally competent professional would have so responded under the circumstances." *Roe*, 631 F.3d 857. As a result, he fails to establish that Defendant's conduct was akin to "intentional mistreatment." *Petties*, 836 F.3d 730 citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Defendant's Motion for Summary Judgment [ECF 32] is GRANTED.

7

**IT IS THEREFORE ORDERED:**

1) Defendant's Motion for Summary Judgment [ECF 32] is GRANTED.  The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff.  This case is terminated, with the parties to bear their own costs.  All deadlines, internal settings and pending motions are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).

3) If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith.  *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith.");  *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED this 28th  day of November, 2017.

_____s/Joe Billy McDade_____
JOE BILLY McDADE
UNITED STATES DISTRICT JUDGE